# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-41194

United States Court of Appeals
Fifth Circuit

**FILED**

September 3, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

FRANCISCO VASQUEZ, also known as Francisco Vazquez; JUAN
ECHEVERRIA,

Defendants-Appellants

Appeals from the United States District Court
for the Eastern District of Texas

Before DAVIS, SMITH, and BENAVIDES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This is a direct criminal appeal by two co-defendants, Francisco Vasquez
and Juan Echeverria, challenging their convictions and sentences for
conspiracy to possess methamphetamine with intent to distribute under 21
U.S.C. § 841(a) and § 846.  We affirm.

I.

Perez-Duarte, Echeverria, and Vasquez were arrested in Plano, Texas,
on March 31, 2011, shortly after Perez-Duarte attempted to sell five kilograms
of methamphetamine to a police informant named Mendoza at a pre-arranged
meeting in a parking lot.  Perez-Duarte had driven Vasquez's red truck to the
meeting with Mendoza.  The methamphetamine was discovered in the bed of

Vasquez's truck. Earlier that day, Echeverria had driven Perez-Duarte in a different vehicle to a preliminary meeting with Mendoza at the same parking lot. After Perez-Duarte's arrest, a hotel keycard from a nearby hotel was discovered in Perez-Duarte's pocket. Later that day, police officers discovered Echeverria at the hotel. Upon seeing the uniformed police officers, Echeverria hurried inside his room and slammed the door shut for two minutes while the police knocked on the door and identified themselves as law enforcement. After the door was finally opened, the police officers found Echeverria and Vasquez inside. Both were then arrested.

The three co-defendants were charged with a single count of conspiracy to possess methamphetamine with intent to distribute under 21 U.S.C. § 841(a) and § 846. Perez-Duarte pleaded guilty, and Echeverria and Vasquez were tried jointly. Both Echeverria and Vasquez testified during their first trial, and were therefore subject to cross-examination.

At the first joint trial in November 2011, the following evidence was presented regarding Echeverria's knowing participation in the conspiracy: (1) Echeverria drove Perez-Duarte to meet Mendoza at their preliminary meeting on March 31, 2011, in the parking lot, (2) Perez-Duarte told Mendoza that Echeverria was his "partner" within Echeverria's hearing, (3) Echeverria ran from police when he saw them at the hotel and slammed his hotel door shut for two minutes while Vasquez flushed his ID card, the data card from a mobile telephone, and potentially other unidentified items down the toilet, (4) Echeverria claimed to have met Vasquez on the day of their arrest in the hotel room, even though there had been more than 500 phone calls during March 2011 between Echeverria's phone and a phone associated with a receipt found in Vasquez's pocket, (5) a note was found in Echeverria's pocket, on which was written a license plate number that appeared to be taken from Mendoza's license plate (although two letters were switched), and (6) the key to Perez-

No. 12-41194

Duarte's car was found hidden in a hole punched into the wall of Echeverria's room in the hotel, even though Perez-Duarte had his own room at a second hotel.

At the same joint trial in November 2011, the following evidence was presented regarding Vasquez's knowing participation in the conspiracy: (1) Perez-Duarte drove Vasquez's red truck to make the sale of methamphetamine to Mendoza, even though Perez-Duarte had another vehicle in Plano, (2) Vasquez initially told police that his truck must have been stolen, then later testified that he had lent Perez-Duarte his truck, (3) Vasquez claimed to have met Echeverria on the day of their arrest in the hotel room, even though there had been more than 500 phone calls during March 2011 between Echeverria's phone and a phone associated with a receipt found in Vasquez's pocket, (4) Vasquez removed the data card from one of his two mobile telephones and flushed it down the toilet just prior to his arrest in the Plano hotel room, (5) Vasquez also attempted to flush his ID card down the toilet, and (6) the key to Perez-Duarte's car was discovered in a hole punched into the wall of the hotel room where Vasquez was arrested.

After hearing this evidence, the jury became deadlocked and the district court declared a mistrial. A second joint trial took place in January 2012. At this second trial, neither Echeverria nor Vasquez testified, and therefore neither was subject to cross-examination. The jury was permitted to listen, however, to a reading of transcripts of both co-defendants' testimony from the first trial, at which both had been subject to cross-examination.

Two significant items of evidence were presented for the first time during the second trial. First, an inmate named Sanchez-Alvarez testified that Echeverria had confessed to him that both he and Vasquez had participated in the conspiracy with Perez-Duarte to sell methamphetamine to Mendoza. Sanchez-Alvarez was then cross-examined. However, because Echeverria

3

elected not to testify during the second trial, Echeverria was never subjected to cross-examination regarding the content of this jailhouse confession.

Second, a California police officer testified regarding Vasquez's 1998 conviction for heroin possession. The California police officer himself had made the 1998 arrest. As the California police officer stated, Vasquez "look[ed] just like the pictures" from the arrestee's file.

After the conclusion of the second trial in January 2012, the jury returned guilty verdicts for both Echeverria and Vasquez. Both Echeverria and Vasquez received sentences within their respective guideline ranges.

## II.

Echeverria raises two issues on appeal. First, Echeverria argues that the evidence is insufficient to show that he was a knowing participant in the conspiracy as charged. Because Echeverria failed to renew his motion for judgment of acquittal at the close of trial, we can reverse his conviction for insufficient evidence only if his conviction constitutes "a manifest miscarriage of justice."[1] A manifest miscarriage of justice occurs only where "the record is devoid of evidence pointing to guilt or contains evidence on a key element of the offense that is so tenuous that a conviction would be shocking."[2] Echeverria argues that such a manifest miscarriage of justice is present in this case because, in his view, the record contains no evidence that Echeverria knowingly participated in Perez-Duarte's scheme to sell methamphetamine.

As the record demonstrates, however, there is considerable evidence to show that Echeverria knowingly agreed and voluntarily participated in the conspiracy. As observed by this court in *United States v. Mann*, 161 F.3d 840,

---

[1] *United States v. Burton*, 324 F.3d 768, 770 (5th Cir. 2003); *United States v. Galvan*, 949 F.2d 777, 783 (5th Cir. 1991).

[2] *United States v. Dowl*, 619 F.3d 494, 500 (5th Cir. 2010); *United States v. McIntosh*, 280 F.3d 479, 483 (5th Cir. 2002).

847 (5th Cir. 1998) (quoting *United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993)), "[a]n agreement may be inferred from a 'concert of action.'" Such a concert of action was shown in this case. Echeverria brought Perez-Duarte to the first meeting with Mendoza, allowed himself to be called Perez-Duarte's "partner" during this meeting, was evidently in close coordination with Vasquez throughout the preceding month, lied to the police about his acquaintance with Vasquez, and refused to allow law enforcement to enter the hotel room while Vasquez flushed his ID card, the mobile phone's data card, and potentially other items down the toilet.

Moreover, the jury also heard Sanchez-Alvarez's testimony regarding Echeverria's jailhouse confession to knowing participation in the conspiracy. As to Echeverria, this confession is a non-hearsay party admission under Rule 801(d)(2)(A) of the Federal Rules of Evidence. The confession was therefore admissible as to Echeverria.[3] This confession, in addition to the other evidence outlined above, undoubtedly provides sufficient proof as to knowledge to support the verdict under any standard. Echeverria's conviction therefore does not constitute a manifest miscarriage of justice.[4]

Second, Echeverria challenges the substantive reasonableness of his sentence. As Echeverria concedes, however, his sentence was within the guideline range. Echeverria has not identified any procedural error committed by the district court in assessing the guideline range. Accordingly, Echeverria's sentence "'is presumptively reasonable'" under *United States v.*

---

[3] *See United States v. Shoemaker*, 746 F.3d 614, 624-25 n.11 (5th Cir. 2014); *United States v. Dixon*, 132 F.3d 192, 198 (5th Cir. 1997). As for Vasquez's challenge to Sanchez-Alvarez's testimony under *Bruton v. United States*, 391 U.S. 123, 127-28 (1968), we address that argument below. Echeverria cannot himself invoke *Bruton* because "[t]he rule enunciated in *Bruton* stems from the right to confrontation and is designed to protect the non-testifying confessor's codefendant, not the confessor himself." *See United States v. Morales*, 477 F.2d 1309, 1316 (5th Cir. 1973).

[4] *See Burton*, 324 F.3d at 770.

No. 12-41194

*Jenkins*, 712 F.3d 209, 214 (5th Cir. 2013) (quoting *United States v. Campos–Maldonado*, 531 F.3d 337, 338 (5th Cir. 2008)). Echeverria suggests that he should have received a downward departure, but this suggestion is not supported by any authority. A district court's refusal to grant a downward departure is not reviewable "unless it was based on a misinterpretation of the Sentencing Guidelines."[5] Because Echeverria does not identify any such misinterpretation, we affirm his sentence.

III.

We next consider Vasquez's arguments. Vasquez argues first that his conviction is contrary to *Bruton v. United States*, 391 U.S. 123, 126-28 (1968). According to Vasquez, his conviction violates the Confrontation Clause because Echeverria's "confession naming him as a participant in the crime was introduced at their joint trial" through a third-party witness, Sanchez-Alvarez, without any opportunity to cross-examine the actual declarant, Echeverria.[6] Because Vasquez raises his *Bruton* challenge for the first time on appeal,[7] he must show that there was plain error affecting his substantial rights.[8]

Under the plain error standard, Vasquez's argument must be rejected. Many circuit courts have held that *Bruton* applies only to statements by co-defendants that are testimonial under *Crawford v. Washington*, 541 U.S. 36, 51 (2004). As these courts have observed, the Supreme Court described "statements from one prisoner to another" as "clearly nontestimonial" for the purposes of the *Crawford* analysis in *Davis v. Washington*, 547 U.S. 813, 825 (2006) (analyzing the facts of *Dutton v. Evans*, 400 U.S. 74, 87-89 (1970)

---

[5] *United States v. McClatchy*, 249 F.3d 348, 360 (5th Cir. 2001).

[6] *See United States v. Nutall*, 180 F.3d 182, 188 (5th Cir. 1999).

[7] *See United States v. Barrandey*, 481 F. App'x 221, 224 (5th Cir. 2012); *United States v. Martinez*, 172 F.3d 866, at \*1 (5th Cir. 1999) (per curiam); *United States v. Gauthier*, 248 F.3d 1138, at \*1 (5th Cir. 2001) (per curiam).

[8] *See United States v. Alaniz*, 726 F.3d 586, 615 (5th Cir. 2013).

(plurality opinion)). Based on this dicta, the Fourth Circuit held in *United States v. Dargan*, 738 F.3d 643, 650-51 (4th Cir. 2013), that the rule of *Bruton* was "simply irrelevant in the context of nontestimonial statements" made "to a cellmate in an informal setting." The Third Circuit likewise held in *United States v. Berrios*, 676 F.3d 118, 128 (3d Cir. 2012), that *Bruton* is no longer applicable to a non-testimonial "prison yard conversation" because "*Bruton* is no more than a by-product of the Confrontation Clause." The First,[9] Second,[10] Sixth,[11] Eighth,[12] Ninth,[13] and Tenth[14] Circuits have also limited *Bruton* to testimonial statements only.[15]

Vasquez has never disputed the government's characterization of Echeverria's jailhouse confession as non-testimonial. Accordingly, the district court's decision to admit Sanchez-Alvarez's testimony regarding Echeverria's non-testimonial confession was entirely in accordance with most of the circuit authorities interpreting the relationship between *Bruton* and *Crawford*.[16] The district court therefore did not commit plain error, and Vasquez's *Bruton* challenge must be rejected.

---

[9] *United States v. Figueroa-Cartagena*, 612 F.3d 69, 85 (1st Cir. 2010).

[10] *United States v. Pike*, 292 F. App'x 108, 112 (2d Cir. 2008).

[11] *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009).

[12] *United States v. Dale*, 614 F.3d 942, 958-59 (8th Cir. 2010).

[13] *Smith v. Chavez*, 11-55211, 2014 WL 1229918, at *1 (9th Cir. Mar. 26, 2014).

[14] *United States v. Clark*, 717 F.3d 790, 816 (10th Cir. 2013).

[15] We applied a similar analysis in our unpublished decision in *United States v. Surtain*, 519 F. App'x 266, 288 (5th Cir. 2013). By contrast, because the defendant "was tried alone," we did not address the issue at all in *Fratta v. Quarterman*, 536 F.3d 485, 496, 502 (5th Cir. 2008) ("[I]t was unreasonable . . . to extend the rule of *Bruton*, which applies in the context of joint or multi-defendant trials, to the context of a single-defendant trial . . . .").

[16] The Seventh Circuit has arguably applied *Bruton* to non-testimonial statements, although without explicitly acknowledging the resulting split of authority. *See Jones v. Basinger*, 635 F.3d 1030, 1037, 1050-52 (7th Cir. 2011) ("Lewis claimed that his brother James Parks had confessed to Lewis that he, Aaron, and Jones had committed the four murders . . . . *Bruton* makes clear that Jones' right to confront Lewis and Parks about that confession was violated by Lewis' and Parks' failure to testify at trial and to subject their testimony to the 'crucible of cross-examination.'").

No. 12-41194

IV.

Vasquez's remaining arguments also fail to identify any reversible error. In particular, his claim for ineffective assistance of counsel was never presented to the district court. Since the record does not permit us to "'fairly evaluate the merits of the claim,'" this challenge is premature on direct appeal under *United States v. Aguilar*, 503 F.3d 431, 436 (5th Cir. 2007) (quoting *United States v. Partida*, 385 F.3d 546, 568 (5th Cir. 2004)).

The district court also did not err in admitting evidence of Vasquez's prior conviction for possession of heroin under Rule 404(b) of the Federal Rules of Evidence. As explained in *United States v. Cooks*, 589 F.3d 173, 182 (5th Cir. 2009) (quoting *United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008) (alteration omitted)), "'the government need only provide *some evidence* that the defendant committed the prior bad act.'" Here, the California police officer who made the 1998 arrest testified that Vasquez "look[ed] just like the pictures" of the individual convicted in California. That individual also had the same name as Vasquez. The prior conviction was therefore admissible.

We also reject Vasquez's argument under Rule 403 regarding the admissibility of the photograph of the AK-47 rifle found on Vasquez's phone. Although Vasquez objected to the photo during the first trial, his objection was never renewed during the second trial. Accordingly, under *United States v. Palmer*, 122 F.3d 215, 221 (5th Cir. 1997), any "objections made at the aborted trial have no bearing on the retrial, as the two are entirely separate affairs." Under the plain error standard, therefore, Vasquez's challenge must be rejected. Admission of the photograph was neither a plain error nor, given the substantial other evidence against him, a source of prejudice to Vasquez's substantial rights in the present case.

Additionally, in light of Vasquez's failure to renew his motion for judgment of acquittal, we also conclude that his conviction under 21 U.S.C. §

8

841(a) and § 846 did not constitute a manifest miscarriage of justice due to insufficiency of the evidence.[17] The record contains sufficient evidence to show Vasquez's knowing participation in the drug conspiracy. As described above, Vasquez participated in a "concert of action" with Echeverria, which demonstrates knowledge of a conspiracy under *Mann*, 161 F.3d at 847, and *Cardenas*, 9 F.3d at 1157. Echeverria's jailhouse confession to Sanchez-Alvarez also directly implicated Vasquez's involvement in the conspiracy. We therefore find no manifest miscarriage of justice.

Finally, the district court did not err in sentencing Vasquez based on a mandatory minimum without a special jury verdict as to the fact of Vasquez's previous drug conviction. Vasquez's argument to the contrary is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224, 246-47 (1998).[18]

## CONCLUSION

For the reasons stated above, we AFFIRM the convictions and sentences as to both Echeverria and Vasquez.

AFFIRMED.

---

[17] *See Burton*, 324 F.3d at 770.

[18] *See Alleyne v. United States*, 133 S. Ct. 2151, 2160 n.1 (2013); *United States v. Posey*, 13-50570, 2014 WL 1724499, at *3 (5th Cir. May 2, 2014); *United States v. Salazar*, 548 F. App'x 289, 289-90 (5th Cir. 2013); *United States v. Fuentes-Ulloa*, 550 F. App'x 251, 252 (5th Cir. 2013); *see also United States v. King*, 751 F.3d 1268, 1280 (11th Cir. 2014); *United States v. Mack*, 729 F.3d 594, 609 (6th Cir. 2013).