[Cite as *State v. Luckie*, 2018-Ohio-594.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

     Plaintiff-Appellee

-vs-

MARCELLUIS T. LUCKIE

     Defendant-Appellant

JUDGES:
Hon. John W. Wise, P.J.
Hon. W. Scott Gwin, J.
Hon. William B. Hoffman, J.

Case No's. 16CA91, 16CA92, 16CA93

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Richland County Court of Common Pleas, Case No's 2015-CR-0665, 2015-CR-0756, 2016-CR-0400 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | February 14, 2018 |

APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| GARY BISHOP<br>Prosecuting Attorney<br>Richland County, Ohio | DAVID M. WATSON<br>3 North Main Street, Suite 702<br>Mansfield, Ohio 44902 |
| By: JOSEPH C. SNYDER<br>Assistant Prosecuting Attorney<br>38 South Park Street<br>Mansfield, Ohio 44902 | |

*Hoffman, J.*

{¶1}    Appellant Marcelluis Luckie appeals the judgment entered by the Richland County Common Pleas Court convicting him of having a weapon under disability (R.C. 2923.13(A)(2),(3)), aggravated murder (R.C. 2903.01(B), four counts of kidnapping (R.C. 2905.01), aggravated burglary (R.C. 2911.11), robbery (R.C. 2911.02), tampering with evidence (R.C. 2921.12), complicity to commit aggravated burglary (R.C. 2911.11), two counts complicity to commit aggravated robbery (R.C. 2911.01)and injuring animals (R.C. 959.92), with firearm and repeat violent offender specifications, and sentencing him to an aggregate term of 115 years incarceration to be served consecutively to a term of life imprisonment without possibility of parole.  Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2}    In the early morning hours of June 24, 2015, Uvon Burns was asleep in her bedroom when she awoke to a man pointing a gun at her, demanding drugs and money. When her dog moved to protect her, the intruder shot the dog.  She had no drugs, but tossed her purse at him which contained her tip money from bartending at the American Legion the night before.  He picked up the purse and ran.

{¶3}    Burns discovered her boyfriend, Jason O'Neal, had climbed into bed with her after she fell asleep.  He laid still so the intruder would not see him.  He heard the intruder ask for weed and money.  He saw the silhouette of a man in a grey hoodie drawn tight, holding a gun.  He noted a tattoo on the intruder's hand, and a pair of Nike boots he had earlier seen on Christian Ramirez, Appellant's co-defendant.  He was later able to identify Ramirez by his voice as well as the tattoo and boots.

{¶4} Burns and O'Neal called the police and discovered the intruder gained entry into the home by kicking the panel out of the front door. The dog survived after receiving emergency veterinary care.

{¶5} At two o'clock that morning, Appellant woke up his girlfriend, Andrea McDowell, to tell her Burns had been robbed and her dog had been shot. McDowell and Burns were coworkers and friends. He claimed he heard about the incident from his friend George Kelly. He insisted they check on Burns the next morning, and they drove to Burns' house. Appellant told Burns and O'Neal he was sorry about their dog. O'Neal found it strange Appellant knew about the dog because the incident was not yet public knowledge.

{¶6} On June 25, 2015, Christshanda Webb was at the home of her brother, Myron Webb, waiting for a cable service installer to arrive. She heard a knock on the back door. She checked the front of the house for a cable van, but no one was there. Others in the house checked the rear door and found Ramirez attempting to force his way into the house. When he noticed people in the house, he ran. Christhanda walked up the street in the direction Ramirez was headed. She saw Appellant approach driving a black Pontiac, and Ramirez jumped on the hood.

{¶7} Shamille Chapman and her baby were asleep on the couch on June 26, 2015, when she awoke to find Appellant and Ramirez standing over her, asking for money and drugs. Appellant held a gun, and Ramirez held a crowbar. Appellant was wearing a black Ohio State hoodie, a mask, gloves, and Hello Kitty glasses. Ramirez was dressed in all black. Ramirez took electronics from the house and put them in bags. The men asked her to have her son come downstairs, and they held him at gunpoint with Chapman. The men demanded she call her boyfriend, Myron Webb, to ask him to come home, and

threatened her if she warned him something was amiss.    She called Webb and asked him to come home.  The men continued to ransack the house while waiting for Webb to arrive, asking her to call Webb multiple times.  Appellant and Ramirez tied up Chapman's son with t-shirts and an electrical cord.

{¶8}    When Webb arrived home, the men ordered him to the ground.  They told Webb they heard he had "bricks."  Webb responded he did not have drugs, but gave them his money.  Unhappy with what they had received, the men planned to stay all night and have Webb withdraw money from the bank for them the next morning.  They told Webb they would put a pillowcase over his head and take the baby with them.  Webb asked them not to involve his family.  When they ordered Webb to walk toward the kitchen, Webb charged the men.  Chapman grabbed the baby and ran into the kitchen where her son was tied up.  She got outside with her son and the baby and screamed for the neighbors to call 911.

{¶9}    After seeing Appellant and Ramirez run away, Chapman went back into the house where she found Webb rolling around on the ground, bleeding from stab wounds to his head, neck, back, and upper arms.  He was transported to the hospital where he died the following day.  The medical examiner found twenty-five stab wounds on Webb.

{¶10}  At 2:00 a.m. on June 26, 2015, McDowell awoke and found Appellant in the kitchen with what appeared to be blood on the back of his shirt.  Shortly thereafter, Appellant asked McDowell to help him put disinfectant on wounds on his shoulder and elbow.  Appellant claimed she saw a logo rather than blood on the shirt, but the next morning Appellant told McDowell he threw the shirt in the river.

{¶11} During the afternoon of June 26, 2015, O'Neal saw Ramirez with a group of people gathered outside a friend's house. During a conversation, O'Neal recognized Ramirez's voice from the break-in on June 24, 2015. O'Neal punched Ramirez and choked him. After he was beaten by O'Neal, Ramirez called his grandfather and told him to get rid of bullets and a pair of "Jordans" which were at his house. Ramirez then called Appellant and told him he got beat up over shooting O'Neal's dog. Ramirez changed his shoes at his house and his clothes at his mother's house before going to the hospital, where he claimed his injuries were the result of a fall from a tree.

{¶12} Chapman's neighbors had reported seeing Appellant and Ramirez flee the scene of the attack on Webb in a black Pontiac Grand Prix. When police went to Ramirez's house to question witnesses, they found a black Pontiac which they identified as the vehicle they were looking for in connection with Webb's murder. Police could see blood on the steering wheel and a tire iron in the car. They found the vehicle was registered to McDowell. Blood was later discovered on the driver's side door, the steering wheel, and the center console lid. DNA testing from the steering wheel cover showed a DNA mixture including Webb and Ramirez. Webb's blood was also found under the passenger door handle and at two locations on the driver's seat.

{¶13} Appellant was indicted with one count of having weapons under disability in case number 2015-CR-0665. He was indicted in case number 2015-CR-0756 on two counts aggravated murder, four counts kidnapping, aggravated burglary, robbery, and tampering with evidence with firearm and repeat violent offender specifications for the events of June 25, 2015. He was indicted in case number 2016-CR-0400 with complicity

to aggravated burglary, two counts of complicity to aggravated robbery, and one count of complicity to injure animals, with firearm specifications, for the events of June 24, 2015.

{¶14} The indictments were consolidated for trial, and consolidated with the co-defendant Ramirez for trial. The case proceeded to jury trial. Appellant was convicted of all counts except one of the two counts of aggravated murder. He was sentenced to a term of life imprisonment without possibility of parole on the aggravated murder conviction, and an aggregate of 115 years incarceration on the remaining charges, to be served consecutively. From the judgments of conviction and sentence Appellant prosecutes this appeal, assigning as error:

"I.  THE TRIAL COURT ERRED BY JOINING OFFENSES IN ONE TRIAL.

"II.  THE TRIAL COURT ERRED BY JOINING MR. LUCKIE WITH CHRISTEN RAMIREZ IN ONE TRIAL.

"III.  THE TRIAL COURT ERRED BY DENYING THE MOTION FOR NEW TRIAL.

"IV.  THE TRIAL COURT ERRED BY PERMITTING THE JURY TO HEAR TESTIMONY FROM WITNESS O'NEAL IN VIOLATION OF THE BRUTON DOCTRINE.

"V.  THE TRIAL COURT ERRED BY PERMITTING THE JURY TO HEAR TESTIMONY FROM WITNESS MATHEWS IN VIOLATION OF THE BRUTON DOCTRINE."

I.

{¶15} Appellant argues the court erred in joining his three separate indictments into one trial. The State moved for joinder of offenses and defendants. Appellant objected to joinder, and the trial court held a hearing on the motion. Following the hearing, the court ruled as follows:

This matter came before the Court upon the motion of the State of Ohio to consolidate all of the above cases for one jury trial. The Court finds that Defendant Marcellus [sic] Luckie and Defendant Christian [sic] Ramirez have each been indicted for the same criminal activity as co-defendants. The criminal activity that each defendant has been indicted with relates to a home invasion type of robbery and burglary that occurred on June 23, 2015 and another similar type of home invasion type of robbery and burglary that occurred on June 26, 2015. In the second offense the State of Ohio alleges that the defendants while acting together murdered Myron Webb. The State contends that all of these offenses were committed as a part of a course of criminal conduct by those defendants while they were acting together.

Based on the arguments of the parties the Court believes that all of these offenses should be consolidated for one trial. Defendant Ramirez, through counsel, has raised the issue that a single statement made by Defendant Luckie to a witness could be used by the State of Ohio to incriminate Defendant Ramirez.

The statement in question on its face does not incriminate Defendant Ramirez. However, the statement could be used to infer Defendant Ramirez's guilt and therefore the Court will not permit the State of Ohio to introduce that particular single statement at the joint trial. This will alleviate any possible Bruton issue and there is no reason not to consolidate the cases for a single trial.

Judgment Entry, August 18, 2016.

{¶16} Joinder of offenses is governed by Crim. R. 8(A), which states offenses may be joined if they are of the same or similar character, are based on the same act or transaction, or are based on two or more acts or transactions connected together or part of a common scheme or course of criminal conduct. Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to witnesses. *See, State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). Joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka*, 101 Ohio App.3d 564, 577–578, 656 N.E.2d 9 (8th Dist. Cuyahoga 1995).

{¶17} If similar offenses are properly joined pursuant to Crim. R. 8(A), the accused may move to sever the charges pursuant to Crim. R. 14, wherein the burden is on the defendant to demonstrate his rights would be prejudiced by joinder. *State v. Strobel*, 51 Ohio App.3d 31, 33, 554 N.E.2d 916 (3rd Dist. Henry 1988).

{¶18} A Crim.R. 14 motion for severance of counts due to prejudicial misjoinder is waived unless it is renewed at the close of the state's case or at the conclusion of all the

evidence. *Strobel, supra,* paragraph two of the syllabus; *State v. Owens* (1975), 51 Ohio App.2d 132, 5 O.O.3d 290, 366 N.E.2d 1367, paragraph two of the syllabus (1975).

**{¶19}** In the instant case, Appellant did not renew his motion for relief from prejudicial joinder. Nonetheless, if it appears a defendant is prejudiced by joinder, a trial court may grant a severance. *State v. Brinkley* 105 Ohio St.3d 231, 824 N.E.2d 959, 2005–Ohio–1507. The defendant bears the burden of proving the trial court abused its discretion in denying severance. *Id.*

**{¶20}** To prevail on a claim to sever counts, the defendant has the burden of demonstrating: 1) his rights were actually prejudiced; 2) at the time of the motion to sever, the defendant provided the trial court with sufficient information so it could weigh the considerations favoring joinder against the potential prejudice to the defendant's right to a fair trial; and 3) given the information provided to the court, the court abused its discretion in refusing to sever the charges. *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992), *citing State v. Hamblin*, 37 Ohio St.3d 153, 158–159, 524 N.E.2d 476 (1988) and *Drew v. United States*, 331 F.2d 85 (D.C.Cir.1964).

**{¶21}** A defendant has not demonstrated prejudice where: (1) if the counts were severed, evidence of alleged misconduct from each count would be admissible in separate trials, and, if not (2) if such evidence would not be admissible, the evidence of each count is simple and distinct. *Id.*

**{¶22}** In the instant case, the focus at the hearing was on joinder of defendants rather than joinder of offenses. Thus, Appellant did not provide the trial court with sufficient information to weigh the considerations favoring joinder of offenses against the potential prejudice of his right to a fair trial.

**{¶23}** Further, we find the evidence of each count is simple and distinct. The indictments involved two incidents which occurred on two separate dates. The witnesses and victims were different as to the two events which resulted in the charges. The trial court clearly laid out each separate offense as set forth in the indictment in the jury instructions. Tr. 3617-3654. Further, the court instructed the jury each of the offenses constituted a separate and distinct matter, and the jury must consider each charge separately, uninfluenced by their verdict as to the other charges. Tr. 3659.

**{¶24}** While Appellant argues he was prejudiced by joinder because the evidence is insufficient to prove his involvement in the home invasion of June 24, 2015, he has not separately assigned as error the judgment is against the manifest weight and sufficiency of the evidence.

**{¶25}** We find Appellant has not demonstrated prejudice from joinder of offenses. The first assignment of error is overruled.

II.

**{¶26}** Appellant argues the court erred in joining his indictments with those of Christen Ramirez for trial.

**{¶27}** Crim.R. 8(B) governs joinder of defendants and states:

> Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such

defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.

{¶28} In order to obtain a severance, a defendant must demonstrate prejudice by the joinder. Crim R. 14 provides, in pertinent part:

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.

{¶29} The decision to grant severance rests in a trial court's sound discretion. *State v. Torres,* 66 Ohio St.2d 340 (1981). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶30} The law favors the joinder of defendants and the avoidance of multiple trials because joinder conserves judicial and prosecutorial time, lessens the expenses of multiple trials, diminishes the inconvenience to witnesses, and minimizes the possibility

of incongruous results from successive trials before different juries. *State v. Thomas* (1980), 61 Ohio St.2d 223, 400 N.E.2d 401 (1980).

**{¶31}** The United States Supreme Court has stated, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Even where the risk of prejudice is high, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* "A request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants." *United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987).

**{¶32}** As discussed in the first assignment of error, the evidence was simple and distinct, and with the exception of the weapons under disability charge against Appellant, the defendants were charged with the same crimes arising out of the same two home invasions. While Appellant argues the evidence was indirect and inferential rather than direct, the case law requires the evidence to be *distinct*, not direct. *Schaim, supra.* Further, the trial court instructed the jury:

> Separately consider the evidence that applies to each Defendant as though he were being tried separately. State your finding to each Defendant uninfluenced by your verdict as to the other Defendant.
>
> Tr. 3659-60.

**{¶33}** We find no abuse of discretion in the trial court's joinder of Appellant and his co-defendant Ramirez for trial.

**{¶34}** The second assignment of error is overruled.

III.

**{¶35}** In his third assignment of error, Appellant argues the court erred in failing to grant a mistrial after Jason O'Neal testified to statements made by Appellant which implicated Ramirez, in violation of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

**{¶36}** A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened. *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497 (1988). The granting of a mistrial is necessary only when a fair trial is no longer possible. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9 (1991). When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of discretion. *State v. Draughn* (1992), 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793-794 (1992).

**{¶37}** In *Bruton*, *supra,* a postal inspector testified about a confession one co-defendant, Evans, had made to the inspector. Evans confessed he and the other co-defendant, Bruton, had committed armed robbery. Neither Evans nor Bruton testified at trial. The court admitted the evidence, but instructed the jury they could not use evidence from Evan's confession against Bruton. The United States Supreme Court reversed, and ruled a substantial risk existed that the jury improperly relied on incriminating, extra

judicial statements in determining the defendant's guilt. 391 U.S. at 126. The defendants should have been tried separately, in which case the postal inspector's testimony would not have been placed in front of the jury which determined Bruton's guilt. *Id.* The basis of the *Bruton* decision was Bruton's inability to confront and cross-examine Evans about his statements concerning Bruton's involvement. Although the evidence regarding Evan's confession was admissible against Evans as an admission of a party opponent, it was not admissible against Bruton, as Bruton was effectively prevented from confronting witnesses against him. *Id.* at 127-128.

**{¶38}** The Ohio Supreme Court found Bruton applicable even when the statement does not clearly implicate the co-defendant:

(T)he Bruton rule applies with equal force to all statements that tend significantly to incriminate a co-defendant, whether or not he is actually named in the statement. The fact that the incrimination amounts to a link in a chain of circumstances rather than a direct accusation cannot dispose of the applicability of the Bruton rule. Just as one can be convicted on circumstantial evidence, one can be circumstantially accused. *Fox v. State* (Ind.App.1979), 384 N.E.2d 1159, 1170.

*State v. Moritz*, 63 Ohio St.2d 150, 155, 407 N.E.2d 1268, 1272 (1980).

**{¶39}** Appellant argues the following testimony by Jason O'Neal violates the Bruton rule, "He [Appellant] jumped out the car. I looked at Uvon in shock. Like, he got out. He hugged her. He says, 'Sorry about what happened. We going to find out who

did this. And sorry about your dog.'" Tr. 762. The testimony concerned Appellant's own statement, not that of Ramirez, his non-testifying co-defendant. Therefore, the testimony does not implicate *Bruton* as to Appellant.

**{¶40}** The third assignment of error is overruled.

IV.

**{¶41}** In his fourth assignment of error, Appellant argues the court erred in admitting testimony of Jason O'Neal which violated the *Bruton* doctrine.

**{¶42}** On cross-examination by counsel for Ramirez, O'Neal testified:

Q. Okay. Now, you told us earlier that, as you put it, when you were beating the brakes off of Christopher [sic] Ramirez at Granite Street, that he, on a couple of occasions said he was sorry.

A. Yeah.

Q. All right. Didn't he also in your presence say that he didn't do it?

A. I didn't hear him say none of that.

Q. I'm sorry?

A. I didn't hear him say none of that.

Q. You didn't hear him say that?

A. No.

Q. Okay. Well, read that answer there on page 6.

A. And he called him out of the car, and he came out. The guy got to questioning, hey, man, how you know Luckie? Yeah, I know Luckie. Ain't that his car? Yeah. I'm doing some work for him. I owe him.

Tr. 842.

**{¶43}** Counsel for Appellant objected, and a discussion ensued concerning whether the testimony was hearsay and/or *a Bruton* violation. After initially sustaining the objection, the court later overruled the objection. Tr. 847.

**{¶44}** Subsequent to *Bruton* and *Moritz* as we discussed in the previous assignment of error (see ¶37-38, supra), case law has changed regarding the type of statements which implicate the Confrontation Clause:

However, case law has evolved. For instance, in *Yarbrough*, the mastermind declarant, who hired the defendant to kill the victim, died prior to trial. After finding the statement against interest hearsay exception applied, the Ohio Supreme Court found no confrontation clause issue with the admission of the declarant's statement to private citizens incriminating himself and the defendant. *Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216 at ¶ 46–54, 56 (and this was prior to *Crawford's* testimonial standard). In any event, the *Bruton* principles were premised on the confrontation clause. As subsequent federal and Ohio state decisions have been rendered limiting the confrontation clause's application to testimonial statements, prior principles must be viewed under the lens of the intervening precedent.

*See Clark*, ——— U.S. ———, 135 S.Ct. at 2180 ("a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial").

In accordance, if the out-of-court statement of a non-testifying codefendant is not testimonial, then *Bruton* has no application because the confrontation clause has no application. "Because it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements." *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009). *See also United States v. Vasquez*, 766 F.3d 373, 378 (5th Cir. 2014); *United States v. Dargan*, 738 F.3d 643, 651 (4th Cir. 2013) ("*Bruton* is simply irrelevant in the context of nontestimonial statements * * * Statements that do not implicate the Confrontation Clause, a fortiori, do not implicate *Bruton*"); *United States v. Clark*, 717 F.3d 790, 816 (10th Cir. 2013) ("the *Bruton* rule, like the Confrontation Clause upon which it is premised, does not apply to nontestimonial hearsay statements"); *United States v. Berrios*, 676 F.3d 118, 128 (3d Cir. 2012) (because "*Bruton* is no more than a by-product of the Confrontation Clause," it is inapplicable to a non-testimonial prison yard conversation).

*State v. Carter*, 7th Dist. Mahoning No. 15 MA 0225, 2017-Ohio-7501, ¶¶ 38-39.

**{¶45}** The Ohio Supreme Court has defined a testimonial statement in accordance with the United States Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36124 S.Ct. 1354158 L.Ed.2d 177 (2004):

Given our review of the foregoing authority, we adopt the "objective witness" test in Ohio. For Confrontation Clause purposes, a testimonial statement includes one made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations. This test conforms to *Crawford* and is supported by both state and federal authority. This definition also prevents trampling on other portions of hearsay law that *Crawford* expressly states do not implicate the right to confront witnesses.

*State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 36.

{¶46} The statement Ramirez made to O'Neal was not given under circumstances which an objective witness would believe the statement would be available for use at a later trial. The statement was made while O'Neal was beating up Ramirez. Further, the statement does not implicate Appellant in a crime; Ramirez merely acknowledged he knew Appellant and had Appellant's vehicle. Other witnesses, including Appellant, testified Ramirez and Appellant hung out together, and Ramirez sometimes drove

Appellant's car.  The trial court did not violate the *Bruton* doctrine in admitting the statement of Ramirez to O'Neal.

**{¶47}**  The fourth assignment of error is overruled.

V.

**{¶48}**  In his fifth assignment of error, Appellant argues the testimony of Ashley Matthews concerning statements she overheard Ramirez make on the telephone violated *Bruton, supra*.  Matthews testified she heard Ramirez telephone his grandfather and tell him to go to Ramirez's house, get the bullets and shoes, and throw them out.  She testified Ramirez then called Appellant and said they "jaked him."  Tr. 2240.  She heard Ramirez tell Appellant he got beat up over shooting the dog.  Tr. 2241.  She could hear Appellant respond, "Really, man?  That's what it was over?"  Tr. 2241.

**{¶49}**  As discussed in the fourth assignment of error, *Bruton* is not implicated unless the statement is testimonial in nature.  *Carter, supra.*  The statements Ramirez made to his grandfather did not in any way implicate Appellant in a crime.  The statement made to Appellant concerning getting beaten up over shooting the dog was not testimonial, as the circumstances would not lead an objective witness reasonably to believe the statement would be used later at trial.

**{¶50}**  The fifth assignment of error is overruled.

**{¶51}** The judgment of the Richland County Common Pleas Court is affirmed.

By: Hoffman, J.

Wise, John, P.J.  and

Gwin, J. concur