[Cite as *State v. Harris*, 2017-Ohio-2985.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104833**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL HARRIS

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-15-598240-A and CR-15-599227-A

**BEFORE:** S. Gallagher, J., McCormack, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** May 25, 2017

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
820 West Superior Avenue, Suite 800
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:    Jeffrey Schnatter
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

{¶1} Michael Harris appeals his convictions from Cuyahoga C.P. Nos. CR-15-599227-A and CR-15-598240-A involving murder, domestic violence, and criminal trespass. We affirm.

{¶2} Cuyahoga C.P. No. CR-15-598240-A ("the murder case") involves the death of a four-year-old. Harris was involved with the child's mother, but he did not live with the family. The two had a relationship for about a year before the child's death but had known each other much longer. The mother had five other children. On the day of the child's death, the mother was taking a shower. The child was at the bathroom door crying. Mother asked Harris to watch the child, something mother routinely did if needed when Harris was around. On her way out of the bathroom door, she saw the child sitting upright on the couch with his siblings. Mother then went in the bedroom and left the children on the couch. At a later undetermined time, she went to get three of the children ready to leave and found the victim unresponsive and not breathing while sitting upright on the couch. She called 911 and attempted to revive him. Emergency medical services responded and transported the child to the emergency room to no avail. Importantly, when the investigating police officers interviewed both mother and Harris, there were no discrepancies in that time line.

{¶3} Eventually Children and Family Services removed all the children because of neglect allegations. Evidently, mother is under investigation for having weapons and

selling drugs from the home. Further, there is evidence indicative of past abuse that the child victim had suffered that could not be explained at trial.

{¶4} The child's death was ruled a homicide by the coroner. It was determined that he had died as a result of blunt force impact to the trunk with skeletal, visceral, and soft tissue injuries. The autopsy revealed several freshly broken ribs, causing internal hemorrhaging, along with evidence of healed fractures, which demonstrated the potential for past abuse. The child's spleen and liver were lacerated, causing bleeding in the abdominal cavity. The blunt force impact could have been from a fist, a foot, or another blunt object. The injuries occurred immediately before the child's death, and according to the state's expert, CPR could be ruled out as to whether the rib fractures were caused by mother's attempt to resuscitate the child. The rib fractures occurred as a result of trauma to the back. Further, from the nature of the injuries, the coroner concluded that the child would have been incapacitated within minutes of sustaining the severe injuries.

{¶5} After the bench trial, Harris was found guilty of murder and sentenced to serve a term of imprisonment for 15 years to life and subject to postrelease control. The remaining counts merged into the murder conviction and are otherwise irrelevant to the appeal.

{¶6} As it relates to case No. CR-15-599227-A ("the assault case"), Harris has not presented any appellate arguments challenging the finding of guilt or sentence in that case. His sole argument is that the trial court should not have joined the second abuse case with the murder one. As such, we must affirm the conviction and sentence in the

assault case and will only address the arguments in the context of the murder case. The assault case arose from unrelated events that occurred several months later than the events underlying the murder case. The assault case involved Harris's physical attack on another girlfriend's teenaged son, different persons from those in the murder case. The two cases were based on crimes that were separate and distinct. The 18-month aggregate sentence imposed on the criminal trespassing and domestic violence charges were imposed concurrently to the indefinite sentence imposed in the murder case.

{¶7} In this appeal, Harris claims that (1) the trial court erred by joining the two cases for the bench trial because that permitted the trier of fact to rely on other acts evidence in finding Harris guilty of murder; and (2) the murder conviction was against the sufficiency and manifest weight of the evidence. We find no merit to the assigned errors.

{¶8} Crim.R. 13 provides that a trial court may order two or more indictments to be tried together "if the offenses or the defendants could have been joined in a single indictment or information" under Crim.R. 8(A). "'[J]oinder and the avoidance of multiple trials is favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses and minimizing the possibility of incongruous results in successive trials before different juries.'" *State v. Anderson*, 8th Dist. Cuyahoga No. 104460, 2017-Ohio-931, ¶ 23, quoting *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981). *See also State v. Schiebel*, 55 Ohio St.3d 71, 86-87, 564 N.E.2d 54 (1990); *State v. Schaim*, 65 Ohio St.3d 51, 58, 1992-Ohio-31, 600 N.E.2d 661. Generally joinder is disfavored where the jury could potentially confuse the issues and

the facts essential to the elements of the distinct crimes. "To succeed on a motion to sever, a defendant 'must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial.'" *State v. Lytle*, 10th Dist. Franklin Nos. 15AP-748 and 15AP-754, 2016-Ohio-3532, ¶ 64, quoting *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990); *Torres* at syllabus. The operative distinction is that these trials occurred before a jury. In a bench trial, the defendant's burden becomes steeper.

{¶9} In this case, Harris waived his right to a trial by jury in both cases. His sole claim, as to the deprivation of a fair trial by the joinder, was because the trial court was permitted knowledge of the distinct crimes and the court could have imputed criminal liability in the murder case, not for the facts pertinent to the individual crimes, but because Harris was charged with another abuse case. Harris further claims that Evid.R. 404(B) precluded the state from offering evidence of each crime at the joined trial.

{¶10} In effect, Harris is attempting to force the state to undertake the Evid.R. 404(B) analysis under the joinder analysis. Evid.R. 404(B) precludes the introduction of other crimes, wrongs, or acts to prove conformity with that character. The state introduced the evidence of the individual crimes to prove each individual crime at trial. The evidence was not presented solely to prove conformity with the defendant's character. *State v. Herring*, 8th Dist. Cuyahoga No. 104441, 2017-Ohio-743, ¶ 12, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278. The primary issue in this case is not Evid.R. 404(B) evidence; it is the propriety of the joinder. If

error occurred in joining the two cases for trial, the admissibility of the Evid.R. 404(B) evidence is moot. On the other hand, if there is no reversible error with respect to the joinder, then Evid.R. 404(B) does not preclude the introduction of evidence for each individual crime. If we concluded otherwise, the state would have been precluded from presenting any evidence to prove the individual criminal charges.

{¶11} Further to this point, in *Lott,* 51 Ohio St.3d 160, 555 N.E.2d 293, the Supreme Court of Ohio upheld a conviction for murder after unrelated charges were joined at trial. It was held that the defendant has the burden to affirmatively demonstrate prejudice from the joinder. *Id.* at 163. Only then does the state bear any burden to negate such claims. *Id.* The prosecutor can use two methods to do so, only one of which relies on Evid.R. 404(B). *Id.* Under the first method, the "other acts" test, the state may argue that it could have introduced evidence of previous crimes under the evidentiary standards if the previous and current offenses had been severed for trial. *Id.* The state has not argued that the "other acts" method is available in this case, and we reject Harris's attempt to force the state into the Evid.R. 404(B) argument. The two methods under the *Lott* analysis are independent of each other. In this case, the state solely relies on the second method.

{¶12} Under that method, the "joinder" test, the state is merely required to show that evidence of each crime joined at trial is simple and direct irrespective of the admissibility under Evid.R. 404(B). "When simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the non-admissibility of evidence of

these crimes as 'other acts' under Rule 404(B)." *Id.* In reaffirming *Lott*, the Ohio Supreme Court also subjected the analysis to plain error review. *State v. Spaulding*, Slip Opinion No. 2016-Ohio-8126, ¶ 74; *State v. Marcinick*, 8th Dist. Cuyahoga No. 89736, 2008-Ohio-3553, ¶ 28.

{¶13} Thus "a joinder cannot result in prejudice if the evidence of the offenses joined at trial is simple and direct, so that a jury is capable of segregating the proof required for each offense." *Lytle* at ¶ 65. The lack of prejudice is even more pronounced when the trier of fact is the court. *State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247, 2014-Ohio-2181, ¶ 11; *State v. Clyde*, 6th Dist. Erie No. E-14-006, 2015-Ohio-1859, ¶ 38. We can presume the trial court is competent and capable of determining the facts pertinent to the distinct elements of the crimes in each separate case. *Campbell* at ¶ 11. It is the defendant's obligation to identify anything in the record to demonstrate that the trial court considered improper evidence in determining guilt. *Id.* Harris has not identified anything of the sort.

{¶14} Instead, Harris's only response is that it is "absurd on its face and even more absurd in reality" that the trial court sitting as the trier of fact is able to distinguish between the evidence for each individual case in a joint trial of two separate and distinct crimes. Even if we presume, for the sake of discussion, that the court erred by joining the cases for the bench trial, Harris's sole claim was that the trial court would hear evidence of both crimes and find him guilty of murder because of the separate assault charge. In a situation such as this, the trial court is always aware of the other crimes

pending before it. The judge presiding over the cases will have knowledge of the other crimes for which the defendant stands to account. Once the jury was waived, there was no way to avoid the trial court from having knowledge of both cases.

{¶15} In light of our conclusions, we cannot agree with Harris's sentiment. We must always rely on the trial court's ability to consider only the relevant evidence for the individual crimes. If a jury is permitted to hear multiple cases of distinct and separate crimes, then a trial court with the benefit of the legal experience necessary to the position would be in a better position to sift through the relevant evidence. *See Campbell*; *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 31 ("the law 'recognizes the presumption that a judge in a bench trial has no difficulty in disregarding inadmissible evidence in reaching [a] verdict'"), quoting *United States v. Cardenas*, 9 F.3d 1139, 1155 (5th Cir.1993). In light of the arguments advanced, we decline to create the rule that would essentially allow a trial court to act as trier of fact in only one of the defendant's multiple cases pending before that court. *See Anderson*, 8th Dist. Cuyahoga No. 104460, 2017-Ohio-931, ¶ 29 (the evidence for each of the four joined cases in the bench trial was simple and direct, and joinder was not prejudicial); *see also State v. Johnson*, 8th Dist. Cuyahoga Nos. 63250 and 63251, 1993 Ohio App. LEXIS 3638, 13 (July 22, 1993); *State v. Eames*, 3d Dist. Union No. 14-93-3, 1994 Ohio App. LEXIS 868, 18 (Mar. 7, 1994) (at a bench trial, the trial court is presumed to be capable of considering only the relevant evidence for each individual charge).

**{¶16}** We also conclude that Harris's conviction for murder is not against the sufficiency or manifest weight of the evidence. A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶17}** The crux of Harris's sufficiency argument is that the state only presented circumstantial evidence in support of his conviction. According to Harris, because there was no direct proof that he injured the child (there was no eyewitness testimony and no DNA or other physical evidence linking Harris to the crime), the state failed to present sufficient evidence of his guilt beyond a reasonable doubt. We can address this argument as summarily as it was presented: "Circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks* at paragraph one of the syllabus.

**{¶18}** Taking the evidence in a light most favorable to the state, Harris was responsible for the child immediately preceding the child's death, which was undisputedly caused by abuse that would have incapacitated the young child within minutes. The other children present could not have caused the injuries according to the state's experts, and the only other adult in the home at the time was in the shower immediately before the

child was found incapacitated, another fact not in dispute. This is a quintessential case of circumstantial evidence, and Harris has not presented any arguments demonstrating why such evidence was otherwise insufficient based on the individual elements of the charged crimes.[1] App.R. 16(A)(7).

{¶19} Finally, when reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* 78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 541. On this point, Harris contends that his conviction is against the weight of the evidence based on (1) mother's testimony that Harris never hurt the children in the past, (2) Harris's

---

[1]Harris's entire sufficiency-of-the-evidence argument is as follows:

There is not sufficient evidence for a jury or any rational trier of fact that Appellant Michael Harris caused the death of D.A. Furthermore, there is no evidence and certainly not sufficient evidence that Mr. Harris caused Felonious Assault or took any action which may have resulted in the infant's death. There are no eyewitnesses to what happened. There is no DNA or other physical evidence linking Mr. Harris any crime charged here. The State's case appears to be one of a process of elimination. The two other children could not have caused the injury or injuries to [the victim]. That leaves only [mother] and Mr. Harris. The date of death of [the victim] is January 10, 2014. Any testimony offered by the State reveals that it [sic] based on inferences, and that the factfinder, in order to convict Appellant of anything including Murder, Involuntary Manslaughter, Felonious Assault, Endangering Children or even Domestic Violence, was then required to make further inferences based upon those other inferences. These inferences piled upon other inferences means that the verdict is flawed and must be vacated.

cooperation with the murder investigation, (3) the fact that children and family services removed mother's children after the murder, and (4) the fact that mother could not explain the past injuries to the deceased toddler.

{¶20} Even assuming the worst, that mother abused the child in the past as Harris contends, that does not address the allegations that on the day the child died, the child was in Harris's care and protection and the injuries caused could only have occurred through the force of an adult — the other children present could not have caused the injuries. If mother abused the child in the past and her children were removed for neglect in the future, this is unrelated to the death of the child and simply goes to the credibility of the state's theory — a matter well within the province of the trier of fact.

{¶21} Of the utmost importance, Harris has not identified any evidence in the record to support the appellate argument that mother — the only other adult present — caused the injuries leading to the child's death or that Harris did not cause the child's injuries or otherwise demonstrate that any element of the murder charge was not satisfied. He has not even attempted to dispute the time line of the events leading to the child's death. He simply asks us to reverse his conviction because of the unproven, remote possibility that mother could have caused the death of the child, a theory presented and rejected by the trier of fact. Harris has not addressed the fact that the injuries the child sustained would have incapacitated the child within minutes and that Harris was the only person capable of inflicting that kind of damage at the time. Harris, in short, has not

presented any arguments challenging that evidence, nor has he identified anything in the record that calls that evidence into question.

**{¶22}** It is not this court's obligation to scour the transcript and build an argument on Harris's behalf.  App.R. 16(A)(7).  We acknowledge there is evidence that mother might at the least have allowed the abuse to occur, but the trial court, as the trier of fact, resolved those issues against Harris.  On the arguments presented, Harris has failed to demonstrate that a manifest injustice occurred.

**{¶23}** We affirm Harris's convictions.

It is ordered that appellee recover from appellant costs herein taxed.        The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

TIM McCORMACK, P.J., and
MARY J. BOYLE, J., CONCUR