[Cite as *State v. Smith*, 2026-Ohio-2405.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                          :

    Plaintiff-Appellee,                         :

                                            No. 115403

    v.                                                          :

ERNEST L. SMITH,                                      :

    Defendant-Appellant.                      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 25, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-695872-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Andrew Rogalski, James D. May, and Daniel T. Van, Assistant Prosecuting Attorneys, *for appellee.*

Christina M. Joliat, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant Ernest Smith ("Smith") challenges his convictions and sentences for theft in office, soliciting or receiving improper compensation, misuse

of credit cards, and aggravated theft. He raises four assignments of error for our review:

> 1. The Court erred by denying appellant's motion to sever thereby allowing prejudicial joinder.

> 2. The Court erred by admitting evidence that lacked a proper foundation and for denying appellant's Crim.R. 29 motion and motion for mistrial.

> 3. The Court erred by instructing the jury as to the definition of misuse of credit cards and theft when there was no governing law or authority.

> 4. The Court erred in ordering restitution in the amounts ordered.

{¶ 2} After a thorough review of the applicable law and facts, we find that (1) Smith failed to show that he was prejudiced by the denial of his motion to sever trial from his codefendant, and his rights under the Confrontation Clause were not violated; (2) the trial court did not err in declining to exclude three of the State's exhibits because Smith failed to show that they lacked foundation; (3) because Smith did not comply with App.R. 12(A)(2) and 16(A)(7) in his second assignment of error, we decline to review the additional two claimed errors raised regarding Crim.R. 29 and his motion for mistrial; (4) Smith invited the claimed error in the jury instructions because his trial counsel suggested the language that he now argues was improper; and (5) the court did not err in ordering restitution pursuant to R.C. 2921.41(C)(2)(a)(ii).

{¶ 3} We overrule the assignments of error and affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 4} Smith was an elected city-council member for the City of East Cleveland ("East Cleveland" or "City") from 2016 to 2022. (Tr. 1351.) During his time as a council member, he was the only member of the East Cleveland City Council ("council") to use a city vehicle. He also had a city fleet card that he used to pay for fuel for the city vehicle totaling $6,791.

{¶ 5} The city vehicle used by Smith was the "council car." It was supposed to only be used during the hours that a council member was conducting city business and was not supposed to go to a council member's residence. (Tr. 1140-1141.) Other council members could not use the vehicle because Smith did not return it to the city lot. (Tr. 1141.) Council members asked Smith to return the car and told him that he was breaking the law by keeping it, but he continued to drive the vehicle and park it at his house. (Tr. 1148.)

{¶ 6} In November 2020, council passed Resolution 42-20, which was titled, "Securing the Return of a City Vehicle in Accordance with Section 127.08 of the Charter of the City of East Cleveland, Ohio and Vacating Appropriations in the Council Budget." (State's exhibit No. 602.) The resolution stated that a city vehicle was improperly parked at Smith's residence and requested its return.

{¶ 7} The resolution was vetoed by the mayor of East Cleveland at that time, Brandon King ("King"). King stated in a letter to council that he had the authority to "designate that a city official may be considered to be continuously on duty and required to keep city vehicles at their personal residence." (State's exhibit No. 601.)

Council attempted to override his veto but did not have the number of votes required to do so. (Tr. 963.)

{¶ 8} Council members Juanita Gowdy ("Gowdy") and Nathaniel Martin ("Martin") submitted a formal complaint to the Ohio Auditor of State ("Auditor"). The complaint alleged that Smith had kept and used a city-owned vehicle for personal purposes in violation of East Cleveland, Ohio Code of Ord. 127.08 ("ordinance"). (Tr. 955.) Subsection (a)(1) of the ordinance stated that no employee or agent of the City shall operate any city vehicles for personal use. (Tr. 959.) The ordinance further stated in subsection (b):

> For purposes of this section only, the mayor, fire chief, police chief, and whoever city council, by legislative action, may designate from time to time shall be considered to be continuously on duty and required to keep city vehicles at their personal residence.

{¶ 9} The complaint alleged that Smith's action violated a city ordinance, that King had allowed Smith to do so, and that council had passed a resolution for Smith to return the car, but King vetoed it and sent a letter to council explaining that he believed he had the authority to allow any city official or council member to use a city vehicle. (Tr. 956-957; State's exhibit Nos. 601 and 602.) The applicable city ordinance, the resolution, and the veto letter were attached to the complaint. (Tr. 957; State's exhibit Nos. 600, 601, and 602.)

{¶ 10} Also attached to the complaint were grainy, black-and-white photographs of city vehicles parked at Smith's residence. (Tr. 967-968; State's exhibit Nos. 700-707.) The photographs had been taken by Justyn Anderson

("Anderson"), who was a deputy clerk of council at that time. (Tr. 770-780; State's exhibit No. 700-707.) Anderson worked third shift and had seen the council car at Smith's residence almost every day. (Tr. 769.)

{¶ 11} Todd Clark ("Clark") was an investigator for the Auditor; his primary job was to investigate complaints of criminal fraud or misuse of public funds. (Tr. 947.) The Auditor initiated a special audit of East Cleveland, and Clark was assigned to investigate the complaint regarding Smith. (Tr. 954-955.) He reviewed the ordinance and noted that it required city vehicles to be parked at the city parking lot. (Tr. 956.)

{¶ 12} In September and October 2021, Clark went to Smith's residence on two occasions. Both times he observed a vehicle with a city license plate parked in Smith's driveway. (Tr. 969.) On his second visit, he observed Smith emerge from his residence and enter the vehicle. (*Id.*) Clark followed Smith to see where he was going in the city vehicle. (Tr. 969.) Smith first went to Shaw High School to take a child there who had been in the vehicle with him. (Tr. 969-970.) Smith later pulled into a vacant lot near the school and got out of the car. (Tr. 970.)

{¶ 13} Clark took photographs during the two times that he surveilled Smith. (Tr. 971; State's exhibit Nos. 708-715.) The photographs showed Smith's residence with the city vehicle parked in the driveway. (Tr. 973.) Clark knew it was a city vehicle because it had a city license plate. (Tr. 974-975.) The photographs also depicted Smith backing out of his driveway in the vehicle and taking the child to Shaw High School. (Tr. 975.)

{¶ 14} As part of his investigation, Clark worked with Georgiana Mavros ("Mavros"), a forensic-audit manager in the Auditor's special-investigations unit. She obtained documents from the city finance director, Charles Iyahen ("Iyahen"), reflecting the vehicles owned by the City and the fleet cards used for fueling the vehicles. (Tr. 978-979.) The documents requested were not just related to Smith — Clark and Mavros sought records related to all city vehicle use and all fuel use. (Tr. 980.) They wanted to determine the veracity of the allegations in the complaint regarding Smith and also ascertain if there were other people in the city government that were using the city vehicles. (*Id.*)

{¶ 15} Mavros and Clark's investigation determined that Smith had used two city vehicles and two fleet cards. (Tr. 981.) The first vehicle was a Ford Taurus and the second was a Dodge Durango. (*Id.*) The Durango was the vehicle in the pictures taken by Clark. (*Id.*) Based upon the records received from the City, Mavros and Clark learned that the Durango had been assigned to King. (Tr. 981-982.) Clark never learned who originally gave Smith the city vehicle and did not know if Smith had to sign paperwork to be given the vehicle. (Tr. 1003.)

{¶ 16} Mavros reviewed the documents and created a spreadsheet of all the fuel purchases on the fleet cards. (State's exhibit No. 604; tr. 1237-1238.) In order to use the fleet card, an individual had to input the PIN that was associated with the card, the vehicle number, and the odometer reading of the vehicle. (Tr. 1050-1051.) Each PIN was specific to the individual with the card. (Tr. 1050.) Mavros sorted the data based upon Smith's PIN, 9779. (Tr. 1232 and 1246; State's exhibit No. 605.)

She counted 158 fuel purchases that were connected to Smith during the audit period. (Tr. 1243.)

{¶ 17} After reviewing the fleet cards assigned to Smith, Mavros compiled a list of all of Smith's fuel purchases on the fleet cards assigned to him. (Tr. 982.) The total of Smith's fuel purchases during the audit period was $6,791. (*Id.*) The investigation did not uncover any other fuel purchases with fleet cards for any other council member during the same time period, and no other council members had been assigned a fuel card. (Tr. 983.) There were no documents received from East Cleveland that denoted Smith's transactions as being related to city business. (Tr. 1251.)

{¶ 18} The Auditor issued a "finding for recovery" against King and Smith and instructed the City to collect the funds from King and Smith and put the money back in the City's general fund. (Tr. 984.) Clark stated that the finding for recovery was not paid by Smith or King but was paid by the City. (Tr. 984-985.) Clark testified that it was improper for the City to repay the funds because the payment was to come from the individuals against whom the finding was issued, Smith and King. (Tr. 986.)

{¶ 19} Clark reviewed the check that had been sent to repay the funds. It was signed by a "finance person" for the City. (Tr. 987.) He tried to obtain financial records from the City regarding the payment but did not receive any. (Tr. 988.) He did not believe that Smith or King had ever paid the finding for recovery. (Tr. 989.)

{¶ 20} King and Smith were charged in a 16-count indictment. The charges pertaining to Smith were (1) theft in office, a felony of the fourth degree, in violation of R.C. 2921.41(A)(1) (Count 11); (2) soliciting improper compensation, a misdemeanor of the first degree, in violation of R.C. 2921.43(A)(1) (Count 13); (3) misuse of credit cards, a misdemeanor of the first degree, in violation of R.C. 2913.21(A)(3) (Count 14); and two counts of theft, felonies of the fifth degree, in violation of R.C. 2913.02(A)(1) (Counts 15 and 16).[1]

{¶ 21} A joint jury trial was conducted. At the conclusion of the State's case, Smith moved for judgment of acquittal pursuant to Crim.R. 29, which was denied.

{¶ 22} Dr. Khadijah Guy ("Guy"), who was a former clerk of council when Smith was a council member, testified as a witness for Smith. Guy testified that in 2017 she was aware of a "council car," a 2003 Ford Taurus, that she understood could be used by any council member who needed it. (Tr. 1301 and 1319.) She obtained a copy of Smith's driver's license and insurance and gave him the keys to the vehicle. (Tr. 1301-1302.) She had him sign a document regarding the issuance of the keys. (Defendant's exhibit Y, p. 1 and 3; tr. 1322-1323.) She also sent an email to council members that stated:

> Please see the following pieces of legislation which talks about the parameters of driving the city vehicles. This was provided at the onset of issuing the vehicle keys to conduct city business by Councilman Smith. Given the fact he required and had no transportation, there is nothing in the legislation that prohibits me, as the clerk, from issuing

---

[1] King was charged with theft in office, having an unlawful interest in a public contract, representation by public official or employee, filing a false disclosure statement, and soliciting improper compensation. Both King and Smith were charged in Count 11, theft in office.

out the keys to one of the council members. This was a matter discussed among the councilmen, finance and mayor regarding getting the vehicle repaired initially.

All proper paperwork was collected by me regarding keys and valid driver's license and forwarded to Charles in finance. There are stipulations regarding where the vehicle should be parked at the close of the business day. This is a matter council members would need to discuss together to enact new legislation that is clearer regarding the protocols.

(Defendant's exhibit Y, p. 4.)

{¶ 23} Guy acknowledged that no other council member had asked for the vehicle but stated that she believed that "everybody else had cars at the time." (Tr. 1301.) She denied having any knowledge that Smith ever used the car for personal use. (Tr. 1302.)

{¶ 24} On cross-examination, Guy was asked if she had documentation that memorialized Smith's use of the vehicle in 2017 and 2018. (Tr. 1315.) She stated that Smith provided fliers of the events that he attended, but there were no mileage logs. (*Id.*)

{¶ 25} Guy further testified that when Gowdy became part of council, council members made "a fuss" about Smith returning the vehicle. (Tr. 1318.)

{¶ 26} Tracy Udrija-Peters, who was clerk of council from 2020 to 2023, also testified on Smith's behalf. She acknowledged that Smith was one of her bosses when she was clerk and that he was very active in the community and sometimes conducted council business beyond regular working hours. (Tr. 1339.) She

discussed prior council members who had utilized city vehicles but stated that there was a process to use the council car. (Tr. 1338 and 1341.)

{¶ 27} Smith testified on his own behalf. He denied using the council car for personal use and stated that anyone else could have used it. (Tr. 1368.) He testified that, in addition to the Ford Taurus, he had also used a Grand Marquis and later a Dodge Durango. (Tr. 1369-1370.) He denied using the vehicles for personal use; however, he acknowledged that the Durango may have occasionally been at his house for a short time. (Tr. 1372-1373.) Smith testified that he did not know if anyone else used the vehicles that he used. (Tr. 1374-1375.)

{¶ 28} Smith stated that he obtained the fleet card from Iyahen after discussing that Smith had been paying for his own fuel while conducting council business. (Tr. 1370.) He denied using the fleet card for personal use. (Tr. 1371.)

{¶ 29} On cross-examination, Smith acknowledged that council had passed the resolution seeking return of the council car but stated that he knew it had been vetoed. (Tr. 1387.) Consequently, he kept driving the vehicle. (Tr. 1389.)

{¶ 30} The jury found Smith guilty on all five counts. The court sentenced him to three years of community control on each count and ordered restitution in the amount of $6,791 to East Cleveland, plus auditing costs in the amount of $6,416.50, with $2,870 payable to East Cleveland and $3,546.50 payable to the Auditor. Smith was also permanently disqualified from holding public office in Ohio pursuant to R.C. 2921.41(C).

{¶ 31} Smith then filed the instant appeal.[2]

## II. Law and Analysis

## A. Motion to Sever

{¶ 32} In his first assignment of error, Smith argues that the joinder of his trial with King's was prejudicial because the jury heard evidence about King's conduct that had no relation to Smith and that King's statements in his veto letter to council violated *Bruton v. United States*, 391 U.S. 123 (1968).

{¶ 33} In his motion to sever, Smith argued that he was prejudiced by the joinder of the trials. Specifically, he asserted that the State's case rested upon statements in a letter from King to council suggesting that he had the authority to give Smith the vehicles in question. Smith asserted that his rights under the Confrontation Clause were violated because he could not cross-examine King. Additionally, Smith argued that he would be convicted because of his proximity to King, whom most of the charges in this case were brought against.

{¶ 34} An appellate court reviews a trial court's ruling on a motion for relief from prejudicial joinder for an abuse of discretion. *State v. Lee*, 2017-Ohio-1449, ¶ 15 (8th Dist.). An abuse of discretion occurs when a court exercises its judgment

---

[2] The jury found King guilty of all but two of the charges against him. Pertinent to this appeal, King was found not guilty of Count 11, the only offense of which he and Smith were both charged. He appealed his convictions and sentences in Appeal No. 115384, which was treated as a companion appeal to this matter.

in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 35} The law favors joinder of multiple offenses in a single trial if the offenses charged "are of the same or similar character." *State v. Torres*, 66 Ohio St.2d 340, 343 (1981); Crim.R. 13; Crim.R. 8(A). Joinder is favored because it offers the benefits of "conserving time and expense, diminishing the inconvenience to witnesses and minimizing the possibility of incongruous results in successive trials before different juries." *Id*. Crim.R. 13 allows two different indictments to be tried together "if the offenses . . . could have been joined in a single indictment or information." Crim.R. 8(A) allows offenses to be joined in a single indictment where they "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan or are part of a course of criminal conduct."

{¶ 36} Further, "'joinder cannot result in prejudice if the evidence of the offenses joined at trial is simple and direct, so that a jury is capable of segregating the proof required for each offense.'" *State v. Harris*, 2017-Ohio-2985, ¶ 13 (8th Dist.), quoting *State v. Lytle*, 2016-Ohio-3532, ¶ 65 (10th Dist.). Here, although there were two codefendants and a number of charges, the evidence against each codefendant was simple and direct. An appellant "claiming error in the trial court's refusal to allow separate trials of multiple charges has the burden of affirmatively showing that his [or her] rights were prejudiced." *Torres* at 343.

{¶ 37} Smith first argues that he was prejudiced because he was prevented from confronting King about the statements that King made against him in State's exhibit No. 601. This exhibit was the letter dated November 9, 2020, from King to the council president at that time. The letter stated that King was vetoing Resolution 42-20 because it was "within [his] prerogative to designate that a city official may be considered to be 'continuously on duty and required to keep city vehicles at their personal residence.' This right also inures to city council." (State's exhibit No. 601.)

{¶ 38} In *Bruton*, the United States Supreme Court recognized that when multiple defendants are tried together, the admission of an out-of-court confession by a codefendant that incriminates the other defendant violates the Confrontation Clause and the violation cannot be cured by means of a limiting instruction. *Bruton*, 391 U.S. at 126 and 137. The same constitutional infirmity may be present when the out-of-court statements were made to a prosecution witness other than a police officer. *See State v. Moritz*, 63 Ohio St.2d 150, 154 (1980). And an out-of-court statement by a codefendant may incriminate a defendant even if the defendant is not mentioned by name. *Id.* at 155, citing *Fox v. State*, 179 Ind. App. 267 (Ind.App. 1979).

{¶ 39} Because *Bruton* violations are grounded in the Confrontation Clause, the out-of-court statements at issue must be testimonial for the protections of the Confrontation Clause to attach. *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009). *See also United States v. Vasquez*, 766 F.3d 373, 378 (5th Cir. 2014); *United States v. Dargan*, 738 F.3d 643, 651 (4th Cir. 2013) ("*Bruton* is simply

irrelevant in the context of nontestimonial statements . . . . Statements that do not implicate the Confrontation Clause, a fortiori, do not implicate *Bruton*."); *United States v. Clark*, 717 F.3d 790, 816 (10th Cir. 2013) ("[T]he *Bruton* rule, like the Confrontation Clause upon which it is premised, does not apply to nontestimonial hearsay statements."), quoting *United States v. Smalls*, 605 F.3d 765, 768, fn.2 (10th Cir. 2010).

{¶ 40} Whether statements are testimonial or nontestimonial depends on the primary purpose of the statements. *State v. McKelton*, 2016-Ohio-5735, ¶ 185. The primary-purpose test is an objective inquiry that considers the totality of the surrounding circumstances. *See State v. Jones*, 2012-Ohio-5677, ¶ 156. Relevant circumstances that bear on the primary-purpose inquiry are the identity of the questioner, the existence of an ongoing emergency, the relative informality of the setting, and application of traditional rules regarding hearsay to the statements at issue. *Ohio v. Clark,* 576 U.S. 237, 244-245, 249 (2015).

{¶ 41} A review of the letter reflects that it was written by King to explain his veto to council. It did not contain any statements made against Smith; it was not a confession and did not mention any wrongdoing. There was not a single statement in the letter that incriminated Smith in any way. Consequently, the Confrontation Clause was not implicated, and *Bruton* did not require the trial court to sever Smith's trial from King's. Smith's argument that he was prejudiced under *Bruton* fails.

{¶ 42} Smith additionally argues that he was prejudiced because there was significant evidence against King, and the jury could have found him guilty based

upon his "mere association" with King. He also asserts that he was not involved with the majority of charges against King because they related to King's personal finances, family business, and financial disclosures.

{¶ 43} "Severance may be warranted if the trial court finds a serious risk that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence." *State v. Kaufman*, 2010-Ohio-1536, ¶ 164 (7th Dist.), citing *United States v. Zafiro*, 506 U.S. 534, 539 (1993). We cannot find that such circumstances existed here. Both King and Smith's defense at trial was that they did nothing wrong. Smith argued that he was using the city vehicle and fleet card for council business. At no point in the trial did Smith or King attempt to inculpate each other. Smith has not demonstrated any prejudice from the joint trial, and we cannot find that the trial court abused its discretion in denying his motion to sever.

{¶ 44} Smith's first assignment of error is overruled.

## B. Admission of Evidence, Sufficiency of the Evidence, and Motion for Mistrial

{¶ 45} In his second assignment of error, Smith contends that (1) the trial court improperly admitted State's exhibit Nos. 604-606 because they were not authenticated and were merely a written summary of documents received by the Auditor; (2) his convictions were not supported by sufficient evidence because there was no evidence that the fuel obtained with the fleet card was used for anything other than public service and there was no evidence presented that Smith had solicited improper compensation; and (3) the trial court erred in denying his motion

for mistrial when a curative order was insufficient following a nonresponsive statement by a witness for the State during cross-examination.

{¶ 46} Smith's first argument, that State's exhibit Nos. 604-606 were improperly admitted, is one paragraph long and does not contain any legal authority upon which he bases his contention. Smith simply argues that there was no foundation for the exhibits because the Auditor did not testify to the evidence received and used to make the spreadsheets. Further, Smith asserts that the exhibits could not be admitted because the fleet-card statements had not been authenticated by the bank.

{¶ 47} In the trial court, Smith argued that for the exhibits to be admissible, the State "had to have had testimony evidence [by] someone with personal knowledge of that data." (Tr. 1256.) He asserted that the State's witness, Iyahen, did not testify as to what data was sent to the Auditor. (*Id*.) We find Smith's argument unpersuasive.

{¶ 48} Mavros testified that she submitted an email request to Iyahen and obtained "fleet cards or fuel card statements" along with a vehicle listing and card listing that would "identify every individual associated with . . . a fuel card." (Tr. 1231.) She stated that she received the documents from Iyahen, the finance director.

{¶ 49} During Iyahen's testimony, he confirmed that he had supplied documents pursuant "to a request from the state auditor" and that he "transmitted data to the state auditor's office regarding vehicles and/or use and, separately, fuel

consumption[.]" (Tr. 1047-1048.)  He later reiterated that he, himself, had pulled data regarding the fleet cards and individuals' PINs and transmitted the data to the auditor's office.  (Tr. 1052.)

{¶ 50} Mavros explained that she gathered all of the statements provided for the audit period, "consolidated them, combined them into one and . . . sorted the data based upon Mr. Smith's ID number."  (Tr. 1232.)  Mavros identified State's exhibit No. 604 as the spreadsheet that she "put together."  (Tr. 1237.)  When asked about certain lines on the spreadsheet, she explained that they came "from the fleet card statements I mentioned that [were] provided by the city."  (Tr. 1238.)

{¶ 51} Mavros also testified regarding State's exhibit Nos. 605 and 606.  She described State's exhibit No. 605 as "the fuel card listing that was provided by the city that lists all of the cards and driver IDs along with the vehicles and driver names."  (Tr. 1245-1246.)  Mavros stated that State's exhibit No. 606 depicted vehicles the city owned and the vehicle ID that correlated with each vehicle.  (Tr. 1246.)  She was asked by the prosecutor if State's exhibit Nos. 605 and 606 were "some of the raw material that you relied upon to prepare State's Exhibit 604?"  (Tr. 1247.)  Mavros acknowledged that they were.  (*Id.*)  She was further asked if she would have "also had all of the fleet card statements associated with all of those other cards, too, and sort of the end result would be what you did in State's Exhibit 604?"  (*Id.*)  Again, Mavros confirmed what she had done with the data.

{¶ 52} We find there was sufficient foundation for admission of State's exhibit Nos. 604-606.  The trial court did not err in admitting the exhibits.

**{¶ 53}** We note that Smith raises two additional arguments under this same assignment of error. App.R. 16(A) requires a party to argue each assignment of error separately. *Cleveland v. Taylor*, 2021-Ohio-584, ¶ 87 (8th Dist.). "App.R. 12(A)(2) recognizes this need for clarity and requires that assignments of error be argued separately. The failure to argue separately assigned errors is grounds for summary affirmance." *Aston v. Aston*, 2018-Ohio-908, ¶ 5 (11th Dist.), citing *Guerry v. Guerry*, 2001 Ohio App. LEXIS 4567 (8th Dist. Oct. 11, 2001). Under this rule, an appellate court may disregard any assignment of error, or portion thereof, if the appellant fails to make a separate argument. *State v. Wells*, 2013-Ohio-3722, ¶ 55 (8th Dist.).

**{¶ 54}** Even if we were inclined to consider the additional claimed errors asserted in the second assignment of error, Smith has not developed arguments in support of these errors using citations to the record and legal authority. "'An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7)." *Kaba v. Cuyahoga Cty. Treasurer of Ohio*, 2026-Ohio-355, ¶ 17 (8th Dist.), quoting *CLE Venture Fund L.P. v. Coventry Partners L.L.C.,* 2025-Ohio-2451, ¶ 25 (8th Dist.), quoting *Strauss v. Strauss*, 2011-Ohio-3831, ¶ 72 (8th Dist.). "'"It is the duty of the appellant, not this court, to demonstrate his [or her] assigned error through an argument that is supported by citations to legal authority and facts in the record.'"" *State v. Jones*, 2020-Ohio-3367, ¶ 68 (8th Dist.), quoting

*State v. Moore*, 2019-Ohio-3705, ¶ 84 (6th Dist.), quoting *State v. Taylor*, 1999 Ohio App. LEXIS 397, *3 (9th Dist. Feb. 9, 1999).

{¶ 55} Smith's second argument, that his convictions were not supported by sufficient evidence, lacks any supportive analysis and applicable legal authority. Smith cites two cases regarding sufficiency of the evidence, but one case was only cited in a conclusory fashion to support his argument that a court must grant a motion for acquittal when the record did not contain any evidence that criminal activity occurred during the time set forth in the indictment. The second case simply held that a conviction was not supported by sufficient evidence when "there was no testimony as to the analysis of the purported cocaine." Smith does not set forth the standard for a Crim.R. 29 motion nor does he explain why his motion for acquittal met that standard.

{¶ 56} Finally, for his argument that the court erred in denying his motion for mistrial, rather than outlining the circumstances that prompted his motion for mistrial, Smith offers only two sentences to vaguely claim that a witness made an improper statement. He does not provide the exact statement that he asserts was so "extreme" that "a curative order was insufficient to preserve the fairness of the trial." He cites to a page in the transcript; however, there are no witness statements on that page — only an exchange between counsel and the court. As a final nail in the coffin, Smith has not provided any legal authority in support of his assertions, particularly with regard to mistrials or curative instructions.

{¶ 57} We are mindful that to the extent possible it is better for appeals to be decided on the merits. *State v. Harris*, 2020-Ohio-4138, ¶ 12 (8th Dist.). However, we decline to address Smith's second and third claimed errors within this assignment of error because they contain conclusory statements that the trial court erred without citation to any case law to establish the relevant standard of review, the applicable law, or how the trial court's decision contravened the law.

{¶ 58} Smith's second assignment of error is overruled.

## C. Jury Instructions

{¶ 59} In his third assignment of error, Smith argues that the jury instruction for Count 14, misuse of credit card, states that the charge "include[d] the use of the credit card account for any expenses beyond those authorized by the ordinance of East Cleveland," but the City does not have a law governing the use of fleet cards. He further asserts that there was no evidence that Smith had used the card for purchases other than fuel for the city vehicles.

{¶ 60} The transcript reflects an extensive discussion between the court and counsel as to the proper wording of this instruction. Both the prosecutor and defense counsel offered suggestions for the language to be used:

> THE COURT: I did write at the bottom, I had a question mark on count – on page 55; misuse of credit card account, includes the use of credit card account for any expense beyond that authorized by, and then it says[,] "Describe the other governing body."
>
> I don't know what we put by written policy of the City of East Cleveland. Misuse of credit card includes the use of a credit card account for any expenses beyond those authorized by written policy of the City of East Cleveland – what's that?

SMITH'S COUNSEL: East Cleveland charter. East Cleveland.

THE COURT: East Cleveland charter.

SMITH'S COUNSEL: Code.

PROSECUTOR: I think the City of East Cleveland is the other governing body. I think City of East Cleveland is better.

THE COURT: The City of East Cleveland charter? What do you –

PROSECUTOR: A lot of the policies –

THE COURT: It's written policy. It's not –

SMITH'S COUNSEL: Ordinances of East Cleveland.

THE COURT: Ordinances of East Cleveland?

SMITH'S COUNSEL: By written ordinance of East Cleveland.

THE COURT: Those authorized by written, what?

SMITH'S COUNSEL: Ordinances of East Cleveland, or instead of written by ordinance of East Cleveland. I mean —

THE COURT: Okay. All right. By ordinance or [sic] of East Cleveland. Got it. Okay.

(Tr. 1460-1461.)

{¶ 61} Ultimately, the language used in the instruction for Count 14 had been suggested by Smith's counsel. Accordingly, any error in providing this instruction is invited error. "Pursuant to the invited error doctrine, a party may not take advantage of an error that the party invited or induced." *State v. Robinson*, 2014-Ohio-2973, ¶ 33 (8th Dist.), citing *State v. Bey*, 85 Ohio St.3d 487, 492-493 (1999).

Therefore, since Smith requested the language of which he now complains, he may not seek to use the instruction to his advantage on appeal.

{¶ 62} Smith's third assignment of error is overruled.

### D. Restitution

{¶ 63} In his fourth assignment of error, Smith argues that the trial court erred in ordering restitution. Specifically, he contends that the amount ordered to East Cleveland does not reflect the actual loss by the City but is "merely the compilation of charges to an ID number where the underlying documents were not admitted to the court for consideration." In addition, he contends that he should not be responsible for the full amount of the auditing costs since both he and King were investigated.

{¶ 64} The restitution ordered related to Count 11, theft in office — specifically Smith's unauthorized use of fleet cards. Both King and Smith were charged in this count. However, Smith was found guilty of the charge, while King was acquitted. After finding Smith guilty, the jury made a further finding that "the value of the property or services was $1,000 or more and less than $7,500, to wit: $6,791."

{¶ 65} At the sentencing hearing, the State requested imposition of mandatory restitution to East Cleveland for the cost of the fuel obtained by Smith via the fleet cards, to wit: $6,791, along with the costs of the investigation by the auditor's office in the amount of $6,416.50. The restitution for auditing costs would be split with $2,870 going to East Cleveland and $3,546.50 to the Auditor.

{¶ 66} The court ordered restitution of $6,791 for the fuel charges. The court stated that under R.C. 2921.41(A)(1), it was required to order restitution for the "actual loss" to the state, political subdivision, or political party that experienced the actual loss. The court explained that King was found not guilty on the charge of Count 11, so Smith was solely responsible.

{¶ 67} With regard to the restitution ordered for the fuel charges, it appears that Smith is reviving his argument from his second assignment of error that State's exhibit Nos. 604-606 were inadmissible. We have already determined that the exhibits were admissible, and we decline to consider this argument in an assignment of error regarding the imposition of restitution.

{¶ 68} Smith further contends that the amount should be reduced for legitimate charges. But the jury found him guilty of theft in office and specifically found the value to be $6,791. Smith does not provide any argument as to how or why the court could have disregarded the jury's findings. Accordingly, we find that the amount of restitution awarded for the fuel charges was proper.

{¶ 69} We further find no error in the court's order of restitution for the costs of the audit, split between East Cleveland and the Auditor. As the court noted, it was statutorily mandated to impose restitution and order Smith to pay the costs of the audit:

> A court that imposes sentence for a violation of this section based on conduct described in division (A)(1) of this section and that determines at trial that this state or a political subdivision of this state if the offender is a public official, or a political party in the United States or this state if the offender is a party official, suffered actual loss as a result of the

offense shall require the offender to make restitution to the state, political subdivision, or political party for all of the actual loss experienced, in addition to the term of imprisonment and any fine imposed. The total amount of restitution imposed under this division shall include costs of auditing the state, political subdivision, or political party that suffered the actual loss based on conduct described in that division that is a violation of this section, but, except as otherwise provided in a negotiated plea agreement, shall not exceed the amount of the restitution imposed for all of the actual loss suffered.

R.C. 2921.41(C)(2)(a)(ii).

{¶ 70} Because only Smith was found guilty of the applicable charge, only he was responsible for the restitution. Smith does not provide any argument or legal authority in his brief as to why the court's order was improper.

{¶ 71} Smith's final assignment of error is overruled.

{¶ 72} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., and
DEENA R. CALABRESE, J., CONCUR